TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
1100 West Town & Country Road
Suite 1250
Orange, California 92868
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

STEPHEN TAYLOR (*pro hac vice* pending)
Lemberg Law, LLC
43 Danbury Road
Wilton, Connecticut 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
E-mail: staylor@lemberglaw.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brenda Hageman, Richard Price, Timothy Sage, Lisa Page, David Kostka, Mark Schofield, Louella Wilson, *on behalf of themselves and all others similarly situated*,<br><br>    Plaintiffs,<br><br> vs.<br><br>Hyundai Motor America,<br><br>    Defendant. | Case No.: 8:23-cv-01045-CJC-KES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT HYUNDAI MOTOR AMERICA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date:  November 27, 2023<br>Time: 1:30 p.m.<br>Place: Courtroom 9B<br><br>Complaint Filed: June 14, 2023 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

BACKGROUND ............................................................................................... 1

ARGUMENT ................................................................................................... 3

    I.     LEGAL STANDARD ................................................................ 3

    II.    HYUNDAI'S MOTION TO STRIKE UNJUST ENRICHMENT
           NATIONWIDE CLASS CLAIMS IS PREMATURE ......................... 3

    III.   THE FAC PLEADS BREACH OF IMPLIED WARRANTY OF
           MERCHANTABILITY ............................................................ 8

    IV.   THE FAC PLEADS BREACH OF EXPRESS WARRANTY .......... 11

          A.    The FAC States Breach of Express Warranty Under the
               Laws of Pennsylvania, Utah, Minnesota, South Carolina ........ 11

          B.    Plaintiff Wilson is in Privity with Hyundai and States a
               Claim for Breach of Express Warranty Under Arizona Law ... 14

CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

**CASES**

*Altronics of Bethlehem, Inc. v. Repco, Inc.*,
  957 F.2d 1102 (3d Cir. 1992) ......................................................................8, 9

*Arlandson v. Hartz Mountain Corp.*,
  792 F. Supp. 2d 691 (D.N.J. 2011)..................................................................9

*Ashton v. J.M. Smucker Co.*,
  2020 WL 8575140 (C.D. Cal. Dec. 16, 2020)..................................................4

*Avedisian v. Mercedes-Benz USA, LLC*,
  2013 WL 2285237 (C.D. Cal. May 22, 2013)...................................................4

*Banh v. Am. Honda Motor Co., Inc.*,
  2019 WL 8683361 (C.D. Cal. Dec. 17, 2019)..................................................4

*Bell Atlantic v. Twombly*,
  550 U.S. 544, 127 S. Ct 1955, 167 L. Ed. 2d 929 (2007) ..............................3

*Bohn v. Pharmavite, LLC*,
  2012 WL 8898669 (C.D. Cal. May 16, 2012)...................................................5

*Bruno v. Eckhart Corp.*,
  280 F.R.D. 540 (C.D. Cal. 2012)......................................................................8

*Davison v. Kia Motors Am., Inc.*,
  2015 WL 3970502 (C.D. Cal. June 29, 2015)...................................................7

*De Shazer v. Nat'l RV Holdings, Inc.*,
  391 F. Supp. 2d 791 (D. Ariz. 2005) ..............................................................14

*Elliott v. Lachance*,
  109 N.H. 481, 256 A.2d 153 (1969)..................................................................9

*Ellsworth v. U.S. Bank, N.A.*,
  2014 WL 2734953 (N.D. Cal. June 13, 2014)...................................................6

*Forcellati v. Hyland's, Inc.*,
  876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............................................................5

*Glob. Recycling, SA v. Montclair Tech., LLC*,
  2017 WL 6512238 (D. Utah Dec. 19, 2017)...................................................12

*Greco v. Bucciconi Engineering Co.*,
  407 F.2d 87 (3d Cir. 1969) ...............................................................................9

*Grivas v. Metagenics, Inc.*,
  2018 WL 6185978 (C.D. Cal. Mar. 19, 2018) ..................................................4

*Grodzitsky v. Am. Honda Motor Co.*,
  2013 WL 690822 (C.D. Cal. Feb. 19, 2013)......................................................4

*Herring v. Home Depot, Inc.*,
    350 S.C. 373, 565 S.E.2d 773 (Ct. App. 2002) ...................................................12

*Hix v. Bos. Sci. Corp.*,
    2019 WL 6003456 (D. Ariz. Nov. 14, 2019) ........................................................14

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................................................................6

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
    2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) .......................................................4

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod.*
    *Liab. Litig.*, 2013 WL 12327929 (C.D. Cal. July 24, 2013) ................................6

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ....................................................................4

*Jakubowski v. Minnesota Min. & Mfg.*,
    42 N.J. 177, 199 A.2d 826 (1964) ...........................................................................9

*Kavon v. BMW of N. Am., LLC*,
    605 F. Supp. 3d 622 (D.N.J. 2022) ........................................................................10

*Keegan v. Am. Honda Motor Co.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012) ....................................................................9

*Klay v. Humana*, Inc.,
    382 F.3d 1241 (11th Cir. 2004) ...............................................................................5

*Larsen v. Vizio, Inc.*,
    2015 WL 13655757 (C.D. Cal. Apr. 21, 2015) ......................................................7

*Lewand v. Mazda Motor of Am., Inc.*,
    2017 WL 8117764 (C.D. Cal. Nov. 8, 2017) ..........................................................4

*Luna v. Universal Studio City Prods. LLLP*,
    2013 WL 12308198 (C.D. Cal. Aug. 27, 2013) ......................................................4

*Makaeff v. Trump Univ., LLC*,
    2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ...........................................................5

*Martin v. Medtronic, Inc.*,
    63 F. Supp. 3d 1050 (D. Ariz. 2014) .....................................................................14

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................................................5

*Partida v. Tristar Prod., Inc.*,
    2021 WL 4352374 (C.D. Cal. Aug. 5, 2021) .........................................................4

*Phan v. Sargento Foods, Inc.*,
    2021 WL 2224260 (N.D. Cal. June 2, 2021) ..........................................................7

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ............................................................................5, 8

*Route v. Mead Johnson Nutrition Co.,*
  2013 WL 658251 (C.D. Cal. Feb. 21, 2013) .................................................7

*Samuel-Bassett v. Kia Motors Am., Inc.,*
  613 Pa. 371, 34 A.3d 1 (2011) ..............................................................12

*Schepler v. Am. Honda Motor Co.,*
  2019 WL 398000 (C.D. Cal. Jan. 29, 2019) ...............................................7

*Seekings v. Jimmy GMC of Tucson, Inc.,*
  130 Ariz. 596, 638 P.2d 210 (1981) .......................................................14

*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.,*
  2001 UT 54, 28 P.3d 669 .....................................................................12

*Troup v. Toyota Motor Corp.,*
  545 F. App'x 668 (9th Cir. 2013) ...........................................................9

*Tsonev v. Kia Motors Am., Inc.,*
  2016 WL 10000244 (C.D. Cal. Nov. 9, 2016) ...........................................7

*TwoRivers v. Lewis,*
  174 F.3d 987 (9th Cir. 1999) ................................................................3

*Walters v. Maytag Corp.,*
  2008 WL 11349737 (D.S.C. June 17, 2008) ............................................13

*Weber v. Dept. of Veterans Affairs,*
  521 F.3d 1061 (9th Cir. 2008) ...............................................................3

*Willard v. Park Indus., Inc.,*
  69 F. Supp. 2d 268 (D.N.H. 1999) .........................................................9

*Xerox Corp. v. Hawkes,*
  124 N.H. 610, 475 A.2d 7 (1984) ...........................................................8


**STATUTES**

13 Pa. Cons. Stat. Ann. § 2314(b) .............................................................8

13 Pa.C.S.A. § 2313(a) ...........................................................................11

Fed. R. Civ. Pr. 12(b)(6) .........................................................................3

Minn. Stat. § 336.2-313(1) .......................................................................11

N.J.S.A. § 12A:2-314(2) ...........................................................................8

NH Rev. Stat. § 382-A:2-314(2) .................................................................8

S.C. Code § 36-2-313(1) ...........................................................................11

Utah Code Ann. § 70A-2-313(1) .................................................................11

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................3

OPPOSITION TO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

Plaintiffs hereby oppose Defendant Hyundai Motor America's ("Hyundai" or "Defendant") Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (Doc. No. 22).[1]

## BACKGROUND

Plaintiffs and putative class members are purchasers and lessees of 2020-2022 Hyundai Palisade vehicles (the "Class Vehicles") who specifically paid between $475-750 on top of the vehicle sales price for a towing package that causes the vehicles to catch on fire.  (Doc. No. 19 ("FAC") ¶¶ 2-4, 110-121).

In an August 22, 2022, letter to the National Highway Traffic Safety Administration ("NHTSA"), Hyundai admitted that "Debris and moisture accumulation on the [Class Vehicles'] tow hitch harness module printed circuit board (PCB) may cause an electrical short, which can result in a fire" and that "[a] fire while parked or driving can increase the risk of injury." *Id*. ¶¶ 4, 123-124.   Hyundai acknowledged it was issuing a recall but it had no fix so it instructed Class Vehicle owners and lessees to park their vehicles outside and away from structures. *Id*. ¶¶ 4-5, 123-125.

Subsequently, Hyundai directed the Class Vehicles' owners and lessees to return their vehicles to Hyundai dealerships to remove a fuse to cut the power to the tow wiring harness module. *Id*. ¶¶ 4-5.  However, this was the opposite of a "fix" or repair: it *disabled* the tow wiring harness modules; without power supplied through the tow hitch wiring harness module, the turn and brake signals do not work. *Id*. ¶¶ 5, 126-27, 168. Indeed, towing with non-working brake lights, turn signals, and auxiliary trailer brakes is dangerous and illegal. *Id.* ¶ 168; *see, e.g., id.* ¶ 67 (unaware that a Hyundai dealership removed her vehicle's wiring harness module fuse, Plaintiff Page attempted to tow her pop-up camper but was pulled over by police due to non-working brake and turn

---

[1] Hyundai's motion does not seek dismissal of all claims. Specifically, Hyundai does not challenge breach of express warranty claims under the New Jersey (Count III) and New Hampshire (Count X) laws. Further, while Hyundai contends the Court should strike nationwide class allegations for unjust enrichment (Count I), Hyundai does not argue the unjust enrichment claim itself (Count I) is insufficiently plead.

signals).

Thus, as a result of Hyundai's sale of defective vehicles and inability to repair them, Plaintiffs and the Class Vehicles' owners and lessees who paid Hyundai $475-750 to equip their cars with the optional tow package could no longer use their vehicles to tow – the very reason that Plaintiffs chose to purchase their cars with the optional tow package in the first place. FAC ¶¶ 2-5, 23, 27, 35, 46, 61, 65, 74, 88, 98.

Plaintiffs' respective towing modules were disabled for between five months to a full year and each were damaged as a result. *Id.* ¶¶ 33, 44, 59, 66, 72, 78-79, 85, 92-93, 96, 107.  For instance, Plaintiff Hageman was unable to tow her trailer and her boat for five months; she lost out on opportunities for her usual fishing and boating excursions despite living only about seven miles away from Beltzville Lake, and her husband had to forego purchasing and moving large items that would require towing a trailer. *Id.* ¶¶ 31, 33.  Plaintiff Price lost the ability to tow his trailer which he bought to haul wood, construction materials, and camping gear; could not plan any camping trips using his vehicle due to his inability to tow camping gear; and had to borrow his brother-in-law's vehicle whenever he needed to tow. *Id.* ¶¶ 40, 44. Likewise, Plaintiff Kostka has been unable to go on family trips with a camper for nearly a year despite normally going on such trips two or three times a year. *Id.* ¶¶ 74, 86. And Plaintiff Schofield lost his ability to tow his boat and Plaintiff Wilson had to halt her plans to tow her camper due to Hyundai's disabling and inability to repair the defective towing modules. *Id.* ¶¶ 94-96, 102, 107.

Plaintiff Sage not only lost the ability to tow but suffered additional out-of-pocket expenses: because his vehicle's towing module was disabled and remained unrepaired he had to spend approximately $925 to rent a truck to tow his camper to North Carolina and back for a family camping trip that he planned since the Summer of 2022. *Id.* ¶ 53.[2]

---

[2] Additionally, he has been unable to plan future trips: typically, Sage would start planning summer trips involving his camper in the preceding months of January or February, but due to his vehicle's defective and inoperable towing module, he was unable to make future vacation plans. FAC ¶¶ 54, 59.

Further, Plaintiff Page was not informed that a Hyundai dealership cut the power to her vehicle's tow wiring harness module.  As a result, she was  pulled over by police due to non-working brake and turn signals on her pop-up camper. FAC ¶¶ 66-67. With the fuse removed in September 2022, and no repair from Hyundai, Page lost the ability to tow her pop-trailer for a whole year, and was unable to make any family road trip plans this past Summer 2023. *Id*. ¶¶ 66, 69, 72.

Plaintiffs are not alone. By Hyundai's own admission, over 40,000 Class Vehicles were affected by the Tow Harness Module Defect. *Id.* ¶ 134.  Since the  recall was announced on August 22, 2022, Class Vehicles' owners have been complaining to the National Highway Traffic Safety Administration and online about their inability to tow and Hyundai's failure to repair the defect. *Id*. ¶¶ 135-141.  Owners not only voiced their frustration regarding their loss of the ability to tow – a big selling point in their decision to buy a Palisade – but have also reported their "wiring harness started smoking and caught on fire." *Id*. ¶¶ 136-140.

## ARGUMENT

### I.   LEGAL STANDARD

On a Rule 12(b)(6) motion, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).  "To avoid a Rule 12(b)(6) dismissal, a complaint [. . .] must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Weber v. Dept. of Veterans Affairs*, 521 F.3d 1061 (9th Cir. 2008) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct 1955, 1974, 167 L. Ed. 2d 929 (2007)).

### II.   HYUNDAI'S MOTION TO STRIKE UNJUST ENRICHMENT NATIONWIDE CLASS CLAIMS IS PREMATURE

Hyundai's request to strike the nationwide unjust enrichment class claims is

premature at the pleading stage and should be addressed at class certification.[3] *See Grivas v. Metagenics, Inc.*, 2018 WL 6185978, at *7 (C.D. Cal. Mar. 19, 2018) (Carney, J.) (denying motion to strike nationwide class allegations at the pleadings stage where, as here, "[defendant] merely identifies differences in the consumer protection laws of the fifty states, and quotes *Mazza's* rationale for the second and third steps of the California choice-of-law analysis," but did not engage in the "necessary substantive, fact-specific analysis"); *Partida v. Tristar Prod., Inc.*, 2021 WL 4352374, at *5 (C.D. Cal. Aug. 5, 2021) (denying motion to strike nationwide class allegations and "defer[ring] this fact-intensive inquiry to the class certification stage, after the parties have engaged in discovery"); *Ashton v. J.M. Smucker Co.*, 2020 WL 8575140, at *15 (C.D. Cal. Dec. 16, 2020) (denying motion to strike where, as here, "Defendants include a chart that summarizes each state law's provisions regarding such elements as scienter, reliance, remedies, and defenses," but did not "apply the facts of this case to those law or attempt to demonstrate, beyond citation to *Mazza*, that a true conflict exists'") (quoting *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, 2012 WL 4490860, at *3-4 (C.D. Cal. Sept. 28, 2012)).[4]

---

[3] While Hyundai seeks to strike the nationwide class claims, it does not argue that Plaintiffs have failed to state claims for relief for unjust enrichment.

[4] *See also Banh v. Am. Honda Motor Co., Inc.*, 2019 WL 8683361, at *4 (C.D. Cal. Dec. 17, 2019) (denying motion to strike; "a detailed choice-of-law analysis is a fact-heavy analysis and is generally inappropriate on a motion to dismiss where the parties have not yet developed a factual record") (internal quotations an citations omitted); *Lewand v. Mazda Motor of Am., Inc.*, 2017 WL 8117764, at *6-7 (C.D. Cal. Nov. 8, 2017) (denying motion to strike ("In other words, Mazda has failed to demonstrate that this is 'the rare case where the pleadings indicate that the class requirements cannot possibly be met.'")); *Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237, at *8 (C.D. Cal. May 22, 2013) (motions to strike class allegations are disfavored and the relief sought is "better suited for determination upon a motion for class certification."); *Luna v. Universal Studio City Prods. LLLP*, 2013 WL 12308198, at *9 (C.D. Cal. Aug. 27, 2013) (denying motion to strike as "dismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery") (citing *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007)); *Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 690822, at *10 (C.D. Cal. Feb. 19, 2013) ("Defendant has yet to file an answer and discovery has not yet begun; given the early stage of the proceedings, and the fact that the Court, in this order, is dismissing some of Plaintiffs' claims, it is premature to determine if this matter should proceed as a class action").

In moving to strike the nationwide class unjust enrichment claim, Hyundai misapplies *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) because *Mazza* undertook its class-wide choice-of-law analysis at the class certification stage, not the pleading stage.  "Until the parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case." *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) (citing *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010) (noting that California's choice-of-law rules require courts to find that there is a "material difference" between the laws of different states on the basis of the facts presented in each case)); *see also Lewand*, 2017 WL 8117764, at *7 (court declined to strike class claims at the pleading stage, as "the parties do not even know in which jurisdictions proposed class members reside, let alone whether any differences in the laws are material").  Here, while Hyundai claims that each states' unjust enrichment claims vary, it makes no effort to apply those purported differences to the facts of this case which is fatal to its argument.

Moreover, if it appears that a choice-of-law analysis could pose issues at the class certification stage after the facts of this case have been developed in discovery, Plaintiffs could seek to certify states-specific subclasses or subclasses comprised of groups of states with substantially similar unjust enrichment laws, rending any state law differences immaterial to class certification. *See Makaeff v. Trump Univ., LLC*, 2014 WL 688164, at *18 (S.D. Cal. Feb. 21, 2014) ("the certification of subclasses may be appropriate where 'applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards'") (citing *Klay v. Humana*, Inc., 382 F.3d 1241, 1262 (11th Cir. 2004)); *Bohn v. Pharmavite, LLC*, 2012 WL 8898669, at *2 (C.D. Cal. May 16, 2012) ("Plaintiff could narrow or define the class in such a way at the class certification stage to make any differences between applicable laws

immaterial").[5]  For example, in *Ellsworth v. U.S. Bank, N.A.*, the court granted class certification where the relevant "laws of the various states [were] capable of being organized into groups with similar legal regimes." 2014 WL 2734953, at *21 (N.D. Cal. June 13, 2014); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 2013 WL 12327929, at *16 (C.D. Cal. July 24, 2013) ("the laws of different states would likely apply, necessitating multiple classes or subclasses of Plaintiffs").

Based on Hyundai's own submission of a compendium of unjust enrichment laws, subclasses can potentially be utilized at class certification to avoid any alleged predominance issues. *See* Dkt. No. 22-32 to 22-43.  For instance, California's unjust enrichment cause of action is available to a consumer who did not receive the benefit of the bargain, just like in Arkansas, District of Columbia, Florida, Illinois, Iowa, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, Utah, and Washington.[6]  Here, whether certification of the nationwide unjust enrichment class or state-specific classes is appropriate is a question for the class certification stage, not the pleading stage. Absent fact discovery regarding, e.g., when Hyundai learned about the Tow Harness Module Defect, the extent of the

---

[5] *See also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015) (classes and subclasses may be certified where multiple state laws are involved); *Mazza*, 666 F.3d at 594 ("express[ing] no view whether on remand it would be correct to certify a smaller class containing only those who purchased or leased Acura RLs in California, or to certify a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law").

[6] With respect to the remaining states addressed in Hyundai's chart, it is not possible to determine at this stage of the proceedings whether state laws materials differ when applied to the facts of this case, or whether any purported differences would predominate, because Hyundai does not set out the elements of those states' unjust enrichment laws. *See, e.g.*, Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, Wisconsin. Dkt. No. 22-32 to 22-43.

defect, Hyundai's disabling of the Class Vehicles' towing harness modules, failure to repair the defect and the profits it earned as a result, the material facts which will – or will not – answer common questions regarding the unjust enrichment claims remain unknown and a choice of law analysis is premature.

Moreover, the few cases that Hyundai cites to where class allegations were dismissed at the pleading stage, are each distinguishable. *Davison v. Kia Motors Am., Inc.*, 2015 WL 3970502, at *2 (C.D. Cal. June 29, 2015), and in *Larsen v. Vizio, Inc.*, 2015 WL 13655757, at *3 (C.D. Cal. Apr. 21, 2015) did not involve unjust enrichment claims; the courts addressed California's consumer protection statutes (California's Unfair Competition Law and Consumers Legal Remedies Act) and misrepresentation laws, which Plaintiffs do not bring here.  Similarly, in *Tsonev v. Kia Motors Am., Inc.*, 2016 WL 10000244, at *5 (C.D. Cal. Nov. 9, 2016), without conducting the extensive choice-of-law analysis that *Mazza* demands, the court struck breach of express warranty class allegations.  But here, the FAC brings the breach of express warranty claims on behalf of state-specific classes, not a nationwide basis.   Similarly inapposite are *Schepler v. Am. Honda Motor Co.*, 2019 WL 398000 (C.D. Cal. Jan. 29, 2019), and *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *6 (C.D. Cal. Feb. 21, 2013), which involved claims not at issue in this case.

*Phan v. Sargento Foods, Inc.*, 2021 WL 2224260, at *8 (N.D. Cal. June 2, 2021) involved "the extreme situation in which a single plaintiff seeks to certify one entire nationwide class involving 50 different state laws, not, *e.g.*, a subset of states grouped into discrete subclasses." By contrast, here seven Plaintiffs bring unjust enrichment claims on behalf of a nationwide class and the claims may be grouped into state-specific classes at the class certification stage if warranted following discovery. Additionally, while court in *Phan* held that a fact-intensive inquiry was not necessary under the facts of that case, *Phan*, 2021 WL 2224260, at *8, Plaintiffs anticipate discovery here will reveal further facts that will be critical to the choice of law analysis at class certification,

including concerning the design, implementation, marketing and key decisions made in California, and Hyundai's post-sale actions regarding the Tow Harness Module Defect.

Ultimately, California's choice-of-law rules require Hyundai, not the Plaintiffs, to prove that there is a "material difference" between California and other states' laws "on the facts of this case." *Pokorny*, 601 F.3d at 995 (emphasis added). Indeed, "*Mazza* did not announce a change in state law that would allow Defendants to substitute *Mazza's* holding in lieu of Defendants' own careful analysis of choice-of-law rules as applied to this particular case." *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012). As in *Bruno*, Hyundai seeks to deprive Plaintiffs "of the most efficient vehicle for adjudication of their injury: a nationwide class action. Before this Court deals such a devastating blow to the consumer, the California Supreme Court requires that [Hyundai] analyze[s] various states' laws under the circumstances of the particular case and given the particular legal issue in question." *Bruno*, 280 F.R.D. at 547 (internal quotations and citations omitted). Because Hyundai improperly attempts to substitute *Mazza* for its own "careful analysis of choice-of-law rules as applied to this particular case," *id.*, its motion to strike or dismiss the nationwide class claim should be denied.

## III. THE FAC PLEADS BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

A vehicle purchased for its advertised ability to tow, but which cannot tow, is not merchantable. Under the laws of Pennsylvania, New Jersey, and New Hampshire, goods are "merchantable" when they "pass without objection in the trade under the contract description" or "are fit for the ordinary purposes for which such goods are used." 13 Pa. Cons. Stat. Ann. § 2314(b); N.J.S.A. § 12A:2-314(2); NH Rev. Stat. § 382-A:2-314(2). Thus, those laws create a warranty of merchantability "to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992); *see also Xerox Corp. v. Hawkes*, 124 N.H. 610, 616, 475 A.2d 7, 9 (1984) ("RSA 382–A:2–314 generally provides that a seller impliedly

warrants that his goods are merchantable or generally fit for the 'ordinary purposes' for which the goods are used").

To state a breach of implied warranty claim under New Jersey and New Hampshire law, the product at issue must not necessarily be defective; Plaintiffs can also state a claim by pleading the product is not fit for purpose for which it was intended. *Elliott v. Lachance*, 109 N.H. 481, 485, 256 A.2d 153, 156 (1969); *Jakubowski v. Minnesota Min. & Mfg.*, 42 N.J. 177, 185, 199 A.2d 826, 831 (1964); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 705 (D.N.J. 2011); *Willard v. Park Indus., Inc.*, 69 F. Supp. 2d 268, 274 (D.N.H. 1999). Additionally, the standard to establish a defect under Pennsylvania implied warranty of merchantability law is low: a defect or a malfunction in merchandise is construed broadly and may be shown where the product "functioned improperly in the absence of abnormal use and reasonable secondary causes." *Altronics of Bethlehem, Inc.*, 957 F.2d at 1105, quoting *Greco v. Buccioni Engineering Co.,* 407 F.2d 87, 89–90 (3d Cir. 1969); *Altronics of Bethlehem, Inc.*, 957 F.2d at 1105-1106 ("plaintiffs carried their burden of demonstrating the existence of a malfunctioning product in the absence of abnormal use and reasonable secondary causes" where plaintiffs experienced communication failures after installation of a security and alarm system despite using it as intended and in light of absence of secondary sources causing malfunction outside defendant's control).

Hyundai asserts that Plaintiffs Hageman's, Sage's, and Schofield's implied warranty claims fail because the Tow Harness Module Defect has purportedly never manifested, i.e., their vehicles did not catch on fire, and their vehicles could provide transportation (even though they could not be used to tow). Def. Mot. at pp. 10-15. In so arguing, Hyundai misses the point. Merely being able to move from point A to point B is not the test of a vehicle's merchantability and inoperability and is not the standard. *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 946 (C.D. Cal. 2012); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 879 (N.D. Cal. 2018); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) ("a defect need not render a vehicle

inoperable to give rise to a claim for breach of implied warranty"). Indeed, Plaintiffs' Class Vehicles were each unmerchantable because they were sold with defective tow wiring harness modules and for approximately one year the only way Hyundai could attempt to repair the defect was disabling the Class Vehicles' ability to tow.

Given that Hyundai represented the Class vehicles could be used for towing (*e.g.,* FAC ¶ 110) and Plaintiffs and the Class Vehicles owners and lessees specifically paid extra money to be able to tow (FAC ¶¶ 3, 23, 27, 35, 46, 61, 65, 74, 88, 98), Hyundai's disabling of the Class Vehicle' towing functionality made the Class Vehicles unable to pass without objection in the trade and not fit for the ordinary purposes for which the Class Vehicles are used, and thus unmerchantable. *See* FAC ¶ 145.

*Kavon v. BMW of N. Am., LLC*, 605 F. Supp. 3d 622 (D.N.J. 2022), is instructive and explains that a vehicle is unmerchantable when a key feature is disabled to avoid a safety defect from manifesting. There, the manufacturer issued a recall informing owners and lessees of hybrid cars "that the battery defect created a risk of 'a short circuit, increasing the risk of fire or injury'" and buyers subsequently brought breach of implied warranty of merchantability claims against the manufacturer. *Id*. at 628. Similar to Hyundai's inadequate response to the defect here, in *Kavon* "[a]t the time the Recall was issued there was no available repair or fix for the battery" and "BMW instructed owners and lessees of the Class Vehicles not to (1) charge their vehicles; (2) drive the vehicles in manual or sport mode; or (3) use the shift paddles." *Id*. Like Hyundai here, BMW moved to dismiss, arguing there was no implied warranty breach as the "vehicles were fit for their intended purpose, *i.e.*, they were capable of being driven, if only on gasoline power." *Id*. at 637. The New Jersey District Court disagreed because "[a]fter BMW issued the Recall, Plaintiffs' vehicle[s] essentially ceased to be the hybrid vehicle it was represented to be. The recall rendered the vehicles, at least until repaired, unfit for their intended use." *Id*. As in *Kavon,* here the Class Vehicles' ability to tow was the very reason why Plaintiffs and Class Vehicles' owners and lessees paid additional money for the Class Vehicles' towing package and Hyundai's recall and

removal of the fuse rendered the Class Vehicles, at least until repaired, unfit for that intended use.

Furthermore, because Plaintiffs' vehicles were not fit for the purpose for which Plaintiffs purchased them, Plaintiffs were injured. As set forth above, with the ability to tow disabled by Hyundai, Plaintiffs were unable to tow for pleasure or work, missed out on opportunities for trips and recreation they otherwise would have taken, and in the case of Plaintiff Sage had to pay extra money to rent another vehicle with towing capabilities. FAC ¶¶ 31, 33, 53, 54, 59, 94, 96. As such, Plaintiffs sufficiently pled their breach of implied warranty of merchantability claims and Hyundai's motion should be denied.

## IV. THE FAC PLEADS BREACH OF EXPRESS WARRANTY

### A. The FAC States Breach of Express Warranty Under the Laws of Pennsylvania, Utah, Minnesota, South Carolina[7]

Hyundai asserts Plaintiffs failed to state breach of warranty claims under Pennsylvania, Utah, Minnesota, and South Carolina laws because the Tow Harness Module Defect has not manifested itself in the Hageman's, Price's, Page's, and Kostka's vehicles. Hyundai is wrong, as manifestation of the nonconformity is not a statutory element, but simply one way of demonstrating that a nonconformity exists.

Under Pennsylvania, Utah, Minnesota, and South Carolina law, any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. 13 Pa.C.S.A. § 2313(a); Utah Code Ann. § 70A-2-313(1); Minn. Stat. § 336.2-313(1); S.C. Code § 36-2-313(1). A breach of an express warranty occurs when warranted goods do not conform to either a promise or an

---

[7] Hyundai does not challenge breach of express warranty claims under New Jersey (Count III) and New Hampshire (Count X) law. Hyundai only seeks dismissal of claims stated under Pennsylvania, Utah, Minnesota, South Carolina, and Arizona law.

affirmation of fact made by a seller.[8]

Here, by removing the fuse to cut power to the tow wiring harness module, Hyundai disabled the Class Vehicles' ability to tow rather than actually repair the defect within a reasonable time and thus rendered the Class Vehicles nonconforming to (1) its representation that the Class Vehicles were capable of towing for which Hyundai charged extra money (FAC ¶¶ 2, 23, 35, 46, 61, 74, 88, 98, 110), and to the terms of its express written warranty promising to repair or replace any nonconformity during "5 years from the date of original retail delivery or date of first use, or 60,000 miles, whichever occurs first." FAC ¶¶ 25-26, 37-38, 48-49, 63-64, 76-77, 90-91, 100-101.

Hyundai's motion to dismiss the breach of express warranty claims focuses on whether Plaintiffs' vehicles caught on fire due to the towing defect. *See* Def. Mot. at pp. 16-21. However, Pennsylvania, Utah, Minnesota, and South Carolina's respective breach of express warranty laws do not use the word "defect." Instead, they refer to a nonconformity with an affirmation or promise. Moreover, manifestation of the nonconformity is not a necessary element of an express warranty element, but simply one way of demonstrating that a nonconformity exists. However, even though the

---

[8] *Samuel-Bassett v. Kia Motors Am., Inc.*, 613 Pa. 371, 428, 34 A.3d 1, 35 (2011) (under Pennsylvania law, to "prevail on her breach of express warranty claim" plaintiff had to establish that a manufacturer "breached or failed to meet its warranty promise," that the breach was the proximate cause of the harm, and the amount of the ensuing damages); *Herring v. Home Depot, Inc.*, 350 S.C. 373, 565 S.E.2d 773 (Ct. App. 2002) (Under South Carolina law, "[w]hen goods do not conform to promise or affirmation of fact made by seller … then seller has breached an express warranty."); *Glob. Recycling, SA v. Montclair Tech., LLC*, 2017 WL 6512238, at *6 (D. Utah Dec. 19, 2017) (under Utah Model Jury Instructions, to "recover under a theory of breach of express warranty, Plaintiff must prove all of the following: (1) that Defendants made an express warranty that became part of the basis of the parties' bargain; (2) that the [product] did not conform to this warranty; (3) that Plaintiff was harmed; (4) that the failure of the [product] to conform to the warranty was a cause of Plaintiff's harm; and (5) that Plaintiff could have reasonably been expected to use or be affected by the product."); *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52–53 (Minn. 1982) (Under Minnesota law, the elements of a breach-of-warranty claim are (1) the existence of a warranty, (2) breach of the warranty, and (3) causation of damages.); *see also SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 20, 28 P.3d 669, 677 (Under Utah law, "to recover under a theory of breach of express warranty, plaintiff must prove, in addition to the existence of the warranty, that breach of the warranty is the direct and proximate cause of the damage.") (internal quotation marks and citations omitted).

OPPOSITION TO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

Plaintiffs' vehicles did not catch on fire, the vehicles' ability to tow was disabled by Hyundai due to the defect, and thus the vehicles did not confirm to Hyundai's promises that the vehicles could in fact be used for towing and that Hyundai would repair the defects.

Hyundai cites to *Walters v. Maytag Corp.*, 2008 WL 11349737, at *2 (D.S.C. June 17, 2008), for the proposition that Plaintiff Wilson's breach of express warranty claim under South Carolina law must fail because her vehicle has not caught on fire. In *Walters*, the South Carolina District Court held plaintiff "has failed to allege breach of an express warranty" because plaintiff has not alleged that "his washer has actually malfunctioned or that the alleged defect has otherwise manifested itself." *Id*. Unlike the washer in *Walters*, Wilson's car actually has "malfunctioned" by virtue of Hyundai having disabled its ability to tow. Such failure of Wilson's car to "conform to either a promise or affirmation of fact made by a seller or a description" constitutes a "breach of an express warranty." *Walters*, 2008 WL 11349737, at *2.

Hyundai also argues Plaintiffs Price and Hageman failed to allege damages flowing from Hyundai's breach. Def. Mot. at pp. 19-20. Hyundai overlooks well-plead allegations in the FAC where Hageman states that with the ability to tow disabled by Hyundai, she had been unable to tow her trailer and her boat for five months; she lost out on opportunities for fishing and boating trips close to her home; and her husband had to forego purchasing and moving large items that would require towing a trailer. FAC ¶¶ 31, 33. Likewise, Plaintiff Price states that as a result of Hyundai having disabled his vehicle's ability to tow, for six months he could not haul wood, construction materials, and camping gear despite purchasing his vehicle for that very purposes; could not plan any camping trips using his vehicle because he could not tow his camping gear; and he had to borrow a relative's vehicle for towing. *Id*. ¶¶ 40, 44.

As such, Plaintiffs sufficiently pled their breach of implied warranty of merchantability claims and Hyundai's motion should be denied.

**B. Plaintiff Wilson is in Privity with Hyundai and States a Claim for Breach of Express Warranty Under Arizona Law**

Hyundai's sole argument for dismissal of Wilson's breach of express warranty claim under Arizona law is an alleged lack of privity. Def. Mot. at pp. 15-16.  However, the Arizona Supreme Court has made clear that "lack of privity between a manufacturer and retail purchaser does not preclude a claim outside the U.C.C. for breach of express warranty." *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 601, 638 P.2d 210, 215 (1981) ("logic precludes rendering meaningless a manufacturer's express warranty to a retail purchaser"); *De Shazer v. Nat'l RV Holdings, Inc.*, 391 F. Supp. 2d 791, 794 (D. Ariz. 2005) (an action for breach of express warranty can arise under the U.C.C. or from agreements between contracting parties); *Hix v. Bos. Sci. Corp.*, 2019 WL 6003456, at *6 (D. Ariz. Nov. 14, 2019) (privity may "exist between the patient and the manufacturer" if the "manufacturer made representations specifically to the plaintiff") (citing *Martin v. Medtronic, Inc.*, 63 F. Supp. 3d 1050, 1061 (D. Ariz. 2014)).

Here, the FAC pleads Wilson's express warranty claims arises from Hyundai's representation that the Class Vehicles were capable of towing (FAC ¶¶ 2, 98) and Hyundai's promise to repair or replace any nonconformity during "5 years from the date of original retail delivery or date of first use, or 60,000 miles, whichever occurs first." FAC ¶¶ 100-101.  Plaintiff Wilson pleads Hyundai breached these specific promises made to Wilson because it disabled her ability to tow and failed to repair her vehicle within reasonable time, which damaged her. *Id*. ¶¶ 236-244.  Privity is not required to bring these breach of express warranty claims under Arizona law.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss. To the extent the Court finds Plaintiffs' claims are insufficiently plead, Plaintiffs request leave to amend.

1    DATED:  November 6, 2023

2                                              By:   /s/   Trinette G. Kent
3                                              Trinette G. Kent
                                               Lemberg Law, LLC
4                                              *Attorney for Plaintiffs*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

3

4

5

        I, the undersigned, certify and declare that I am over the age of 18 years, and not a party to the above-entitled cause. I hereby certify that on November 6, 2023, a copy of the foregoing was filed electronically.  Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

6

7

8

9

10

                    By: ___/s/   Trinette G. Kent_____

                    Trinette G. Kent
                    Lemberg Law, LLC
                    *Attorney for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS FIRST
AMENDED COMPLAINT